UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TERRY M.,

                          Plaintiff,

v.                                                  5:17-CV-1021
                                                  (TWD)
COMM'R OF SOC. SEC.,

                          Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON        STEVEN R. DOLSON, ESQ.
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.              JEAN M. DEL COLLIANO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

# DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Terry M. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9 and 10.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's complaint is dismissed.

I.       **RELEVANT BACKGROUND**

   A.    **Factual Background**

Plaintiff was born in 1964, making her 47 years old at the alleged onset date and 52 years old at the date of the ALJ's decision. She reported completing one year of college and obtaining a certificate in medical assisting, and has previous work as a store laborer and cake decorator. At the initial application level, Plaintiff alleged disability due to breast cancer in remission, depression, stomach ulcers, sleep apnea, diabetes, high blood pressure, osteoarthritis in the arms and hands, chronic sinusitis, irritable bowel syndrome, asthma, and carpal tunnel syndrome.

   B.    **Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits ("DIB") on July 16, 2015, and for Supplemental Security Income on September 23, 2016. Her DIB application was initially denied on September 24, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at two administrative hearings before ALJ Elizabeth W. Koennecke on October 17, 2016, and March 21, 2017. (T. 110-54.)[1] On March 29, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 73-91.) On July 19, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-5.)

---

[1]    The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

## C. The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law. (T. 78-85.) First, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015, and found Plaintiff has not engaged in substantial gainful activity since November 1, 2011. (T. 78-79.) The ALJ also found Plaintiff's obesity and bilateral arm impairments are severe impairments, but Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"), specifically considering Listing 1.02 (major dysfunction of a joint). (T. 79-80.) The ALJ then found Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work and indicated Plaintiff could lift no more than 20 pounds and perform no mopping, sweeping, or work that requires flexion or extension of the elbows with no other limitations. (T. 80-81.) While Plaintiff is unable to perform any past relevant work, the ALJ found there are jobs existing in significant numbers in the national economy which she can perform. (T. 83-85.) The ALJ therefore concluded Plaintiff is not disabled.

## D. The Parties' Briefings on Their Cross-Motions

### 1. Plaintiff's Motion for Judgment on the Pleadings

In support of her motion for judgment on the pleadings, Plaintiff generally argues the ALJ's decision is not supported by substantial evidence because the ALJ erred by failing to include limitations on the use of Plaintiff's hands within the RFC finding while simultaneously basing the RFC finding on an erroneous reading of the record. (Dkt. No. 9 at 2-13.) Plaintiff alleges she had a reduced capacity in her use of the hands, the objective medical records establish a severe impairment in the use of the hands and wrists, and medical source statements

provide functional limitations on the use of the hands, all of which are ignored by the ALJ. (*Id.* at 5-9.) Also, the ALJ acknowledged Plaintiff has alleged disability based at least in part on a diagnosis of carpal tunnel syndrome, but did not classify the diagnosis as severe or not severe at Step Two and rather utilized the generic term of "bilateral arm impairments" as a severe impairment. (*Id.* at 5.)

Regarding the medical source statement of treating physician Jon Loftus, M.D., Plaintiff contends the ALJ misclassified Dr. Loftus' opinion because this opinion not only indicated a 15-pound lifting restriction which the ALJ afforded considerable weight, it also indicated a 35 percent impairment with regard to Plaintiff's bilateral hands and wrists, with the ALJ making no finding regarding Plaintiff's hands and wrists. (*Id.* at 10, citing T. 1026.) Plaintiff also argues the lifting limitation of 15 pounds is inconsistent with the finding that Plaintiff is capable of light work, which requires lifting and carrying 20 pounds occasionally. (*Id.* at 10-11.)

Regarding the opinion of treating physician Paul Curtis, M.D., Plaintiff asserts the ALJ fails to mention the restrictions opined in a treatment note dated January 9, 2012, which includes no repetitive use of the hands, and the ALJ does not include any restriction on the use of the hands in the RFC. (*Id.* at 11.) Plaintiff contends the ALJ mischaracterized the record by indicating Dr. Curtis opined in January 2014 that Plaintiff had a weight restriction of about 20 pounds, yet this was a factual inaccuracy by Dr. Curtis as Dr. Loftus had actually returned Plaintiff to work with a restriction of 15 pounds. (*Id.*) Plaintiff points out that these alleged errors are important because they undermine the ALJ's RFC finding indicating Plaintiff is capable of light work without any restrictions on the use of her hands and the ALJ's misreading of the record precludes meaningful judicial review. (*Id.* at 11-12.)

4

Additionally, Plaintiff argues the ALJ failed to explain why she did not include the limitations on the use of the hands as opined by both treating physicians. (*Id*.) Plaintiff also contends the lack of any limitation on the use of the hands precluded the ALJ's reliance on the vocational expert ("VE") testimony to deny Plaintiff's claim. (*Id*. at 12.)

### 2. Defendant's Motion for Judgment on the Pleadings

In support of her motion for judgment on the pleadings, Defendant makes three arguments indicating the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence and should be affirmed. (Dkt. No. 10 at 3-15.) First, Defendant argues the ALJ's Step Two finding was proper. (*Id*. at 5-7.) Plaintiff's diagnosis of carpal tunnel syndrome does not mean it should necessarily be considered a separate impairment at Step Two, especially considering the broad "bilateral arm impairments" term used by the ALJ to cover the various conditions discussed in the record regarding Plaintiff's upper extremities. (*Id*. at 6.) Even if the ALJ should have included carpal tunnel syndrome as an impairment, failure to do so is harmless where, as here, the ALJ proceeded past Step Two and considered the effects of all of Plaintiff's impairments through the remainder of the sequential evaluation process. (*Id*. at 6-7.)

Defendant also contends the ALJ's RFC finding was proper. (*Id*. at 7-10.) The ALJ did incorporate limitations relating to Plaintiff's wrists and hands into the RFC, including the limitations of lifting no more than 20 pounds and no mopping or sweeping. (*Id*. at 7-8.) Thus, there is substantial evidence in the record to support the ALJ's RFC without any further limitations as the ALJ considered the evidence highlighted by Plaintiff in support of further limitations, and considered all such evidence in the context of the record as a whole. (*Id*. at 8-10.) Further, Plaintiff's ability to do extensive activities of daily living, all of which include the

use of one's hands and wrists, do not suggest greater limitations than those set forth in the ALJ's RFC.  (*Id*. at 10.)

Defendant then argues the ALJ properly considered the medical opinions.  (*Id*. at 10-14.)  The ALJ explicitly addressed the two opinions from November 2011 and January 2014 of Dr. Curtis in her decision.  (*Id*. at 11.)  While the ALJ did not explicitly identify the January 2012 opinion in her decision, that opinion is identical to the November 2011 opinion which she did consider, aside from a limitation regarding the repetitive use of Plaintiff's hands.  (*Id*.)  Plaintiff failed to show how a reference to a limitation in repetitive hand motions cited in only one opinion could overcome the substantial evidence in the record supportive of the ALJ's RFC finding.  (*Id*.)  The ALJ clearly assessed the evidence concerning Plaintiff's hand/wrist condition throughout the opinion and decided that no further limitation beyond those in the RFC was justified by the evidence.  (*Id*. at 11-12.)

Regarding Plaintiff's argument that the ALJ mischaracterized the evidence when she cited Dr. Curtis' opinion about Dr. Loftus' findings, Defendant contends the ALJ properly quoted Dr. Curtis' assessment indicating Plaintiff was returned to work by Dr. Loftus with light duty restrictions of about 20 pounds because Dr. Curtis was clearly referring to a separate opinion since Dr. Loftus' June 2014 opinion was six months after Dr. Curtis' January 2014 opinion.  (*Id*. at 14.)

Finally, even if this one reference in one opinion could have changed the ALJ's RFC finding to include a limitation of repetitive hand motion, Defendant asserts remand is not warranted because the additional limitation would not ultimately change the ALJ's adverse finding.  (*Id*. at 11-12.)  The three jobs identified by the VE, including furniture rental

6

consultant,[2] usher,[3] and school bus monitor,[4] require either no handling and fingering or only occasional handling and fingering and, therefore, an additional limitation regarding repetitive hand motion would not have affected the ALJ's ultimate adverse determination. (*Id*. at 12-14, citing U.S. Dep't of Labor's SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES ("SCO") (1993), §§ 04.02.03, 09.04.02, 09.05.08; T. 83-85, 422.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[2] Dictionary of Occupational Titles ("D.O.T.") code 295.357-018. *See* DICTIONARY OF OCCUPATIONAL TITLES (U.S. Dep't of Labor, 4th Ed., rev. 1991).
[3] D.O.T. code 344.677-014.
[4] D.O.T. code 372.667-042.

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an

> impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Substantial Evidence Supports the ALJ's Analysis of Plaintiff's Impairments at Step Two

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at

265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Id.* (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371 (FJS/GJD), 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236 (GLS/VEB), 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *report and recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here, at Step Two, the ALJ found Plaintiff's obesity and bilateral arm impairments to be severe impairments. (T. 79-80.) Plaintiff argues the objective medical records establish a severe impairment in the use of the hands and wrists and appears to argue that the ALJ erred in failing to classify her diagnosis of carpal tunnel syndrome as severe or non-severe at Step Two, choosing instead to find Plaintiff's "bilateral arm impairments" severe. (Dkt. No. 9 at 5-10.) The Court finds these arguments unpersuasive.

First, the ALJ found at least one physical impairment severe at Step Two and continued the sequential evaluation, which included making the RFC and Step Five determinations. (T. 79-

85.) Second, the ALJ's overall decision and her use of the term "bilateral arm impairments" takes into account Plaintiff's hand and wrist symptoms as this term generally addresses Plaintiff's alleged problems with her bilateral upper extremities. For example, the ALJ listed "osteoarthritis in the arms and hands" and "carpal tunnel syndrome" in a recitation of Plaintiff's alleged impairments at the start of her Step Two analysis, indicating she was aware of Plaintiff's alleged hand/wrist impairments. (T. 79.) For these reasons, the Court finds any error by the ALJ in failing to explicitly classify Plaintiff's diagnosis of carpal tunnel syndrome as severe or non-severe to be harmless.

Therefore, the Court finds that substantial evidence supports the ALJ's findings at Step Two and remand is not required on this basis.

> **B.** **Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC**

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). The factors for considering opinions from non-treating medical sources are the same as those for assessing

treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

RFC is defined as "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

In considering the opinion evidence here, the ALJ noted Dr. Curtis' November 2011 opinion indicating Plaintiff had a restriction for no lifting greater than 20 pounds and no repetitive flexion or extension of the elbows to include no mopping or sweeping. (T. 82, 1084-85.) The ALJ also noted Dr. Curtis' January 2014 opinion, again opining Plaintiff had a weight-lifting restriction of about 20 pounds. (T. 82, 1107.) The ALJ afforded these opinions great weight, "as they are from a treating source familiar with the claimant's progress" and "are unrebutted by and generally consistent with any objective or opinion evidence entitled to significant weight in the file." (T. 82.) The ALJ also noted Dr. Loftus' June 2014 opinion indicating Plaintiff could continue to work with a 15-pound lifting restriction and afforded this

12

opinion considerable weight, "as it is from a treating source familiar with the claimant's progress and because it is consistent with the longitudinal record of treatment." (T. 82, 1026.)

Additionally, the ALJ noted a July 2015 report of Mary Barbara, P.A., indicating Plaintiff could lift up to 25 pounds or less, and afforded it less weight as it was not supported by any relevant evidence. (T. 82, 597.) The record also contained several reports and opinions from Plaintiff's Workers' Compensation Board file and the ALJ indicated these independent medical examination reports and treating provider reports were considered for reported clinical and diagnostic findings and functional limitations only. (T. 83.) Any conclusory statements assessing disability and/or the degree thereof under Workers' Compensation guidelines or rules were not considered, as they were based upon the Workers' Compensation Board's own rules, were not binding on the ALJ, and represented an opinion on an issue reserved to the Commissioner. (*Id.*)

Plaintiff generally argues the ALJ's decision is not supported by substantial evidence because the ALJ erred by failing to include limitations on the use of Plaintiff's hands within the RFC finding while simultaneously basing the RFC finding on an erroneous reading of the record. (Dkt. No. 9 at 2-13.) The Court disagrees.

First, as argued by Defendant, the ALJ's decision indicates she carefully considered the objective medical evidence pertaining to Plaintiff's bilateral arm impairments, noting that the objective evidence of record failed to support the level of severity alleged by Plaintiff. (T. 81-82.) The ALJ also concluded that Plaintiff had described daily activities, including walking several miles per day and caring for family members, that were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. (T. 82, 722, 1037.)

13

Second, the ALJ's consideration of the opinions from Dr. Curtis and Dr. Loftus is supported by substantial evidence. Notably, Defendant correctly contends the ALJ properly quoted Dr. Curtis' January 2014 opinion indicating Plaintiff was returned to work by Dr. Loftus with light duty restrictions of about 20 pounds, rather than the ALJ mischaracterizing the record or Dr. Curtis inaccurately quoting Dr. Loftus' subsequent opinion from June 2014. (Dkt. No. 10 at 14; T. 82, 1026, 1106-07.)

Plaintiff argues the ALJ misclassified Dr. Loftus' opinion because this opinion not only indicated a 15-pound lifting restriction to which the ALJ afforded considerable weight, it also indicated a 35 percent impairment with regard to Plaintiff's bilateral hands and wrists, yet the ALJ made no finding regarding Plaintiff's hands and wrists. (Dkt. No. 9 at 10; T. 1026.) Plaintiff also argues the lifting limitation of 15 pounds is inconsistent with the finding that Plaintiff is capable of light work, which requires lifting and carrying 20 pounds occasionally. (Dkt. No. 9 at 10-11; T. 1026.) The Court notes the ALJ afforded Dr. Loftus' opinion considerable, but not controlling, weight and was tasked with the responsibility of reviewing all the evidence before her, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *see also Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of

the evidence available to make an RFC finding that [is] consistent with the record as a whole.") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *West v. Comm'r of Soc. Sec.*, 15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), *report and recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing *Matta*, 508 F. App'x at 56).

The ALJ's decision, including her analysis of the opinion evidence, indicates she fulfilled this responsibility and, as argued by Defendant, assessed the evidence concerning Plaintiff's hand/wrist condition throughout the decision, finding that no further limitation beyond those in the RFC was justified by the evidence. (Dkt. No. 10 at 11-12; T. 81-83.) In explicitly stating she considered the Workers' Compensation reports and opinions in the record for reported clinical and diagnostic findings and functional limitations only, clearly the ALJ did consider impairment ratings contained in the record, including Dr. Loftus' 35 percent rating. (T. 83, 1026.)

Regarding Plaintiff's argument pertaining to the ALJ's failure to mention restrictions opined by Dr. Curtis in a treatment note dated January 9, 2012, which included no repetitive use of the hands, the Court finds any purported error therein to be harmless. (*Id*. at 11.) As an initial matter, the Court notes "an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision." *Coleman v. Comm'r of Soc. Sec.*, 14-CV-1139 (GTS/WBC), 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (quoting *LaRock ex. rel. M.K. v. Astrue*, 10-CV-1019 (NAM/VEB), 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)). Further, as Defendant contends, the January 2012 opinion is identical to the November 2011 opinion with the exception of a limitation of the repetitive use of the hands and the additional limitation would not have changed the ALJ's decision. (Dkt. No. 10 at 11-12; T. 1085, 1088.)

The ALJ's overall decision indicates adequate consideration of the evidence of record, including Plaintiff's treatment notes and the objective medical evidence pertaining to Plaintiff's wrist and hand symptoms, leaving the Court able to glean the rationale of the ALJ's analysis relating to the opinion evidence and her RFC determination. (T. 81-83.) For example, the ALJ's RFC analysis includes references to treatment notes regarding Plaintiff's improved finger sensation in September 2012 following surgery as well as treatment notes from April 2012 indicating electrodiagnostic studies showed evidence of only mild left carpal tunnel syndrome and mild left ulnar neuropathy across the elbow. (T. 81, 1012, 1016.) The ALJ noted Plaintiff's July 2013 right-sided surgery for lateral epicondylar denervation with right cubital tunnel release and subsequent treatment notes indicating she had normal-appearing hands and wrists bilaterally with good range of motion of the wrists and fingers. (T. 82, 1021, 1023.) The repeat electrodiagnostic studies in November 2013 showed evidence of mild bilateral carpal tunnel syndrome and a left wrist x-ray in May 2016 showed no acute osseous abnormality. (T. 82, 1025, 1029.) In explicitly stating she considered the Workers' Compensation reports and opinions in the record including those from treating providers, the ALJ indicates she considered Dr. Curtis' January 2012 treatment note despite not specifically addressing that treatment note in her decision. (T. 83, 1087-88.)

Finally, the Court's review of the record, the ALJ's decision, the information provided by the VE for the identified positions, the D.O.T. descriptions, and the information in the SCO as cited by Defendant indicates the inclusion of an additional limitation regarding repetitive use of the hands would not have affected the ALJ's overall decision because the positions require either no handling or fingering or only occasional handling or fingering and would not be precluded by

such a limitation. Therefore, the Court finds any error by the ALJ in failing to include a limitation regarding repetitive use of the hands to be harmless error not warranting remand.

Thus, the Court concludes the ALJ's analysis of the medical opinions and the resulting RFC are supported by substantial evidence. Remand is therefore not required on this basis.

### C. Substantial Evidence Supports the Step Five Finding

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

After determining the RFC, the ALJ found Plaintiff is unable to perform any past relevant work based on the VE testimony provided in responses to interrogatories. (T. 83, 421-23.) The ALJ then found Plaintiff could perform other jobs existing in significant numbers in the national economy including furniture rental consultant, usher, and school bus monitor, again based on the VE testimony. (T. 83-85, 421-23.)

Plaintiff argues the lack of any limitation on the use of the hands precluded the ALJ's reliance on the VE testimony to deny Plaintiff's claim. (Dkt. No. 9, at 12.) However, as discussed in Section III.B. of this Decision and Order, the Court finds that (1) substantial evidence supports the ALJ's analysis of the opinion evidence and her RFC determination, and (2) any error by the ALJ in failing to include a limitation regarding repetitive use of the hands is harmless error not warranting remand. Therefore, the Court finds that the ALJ's reliance on the VE testimony is appropriate and the Step Five finding is supported by substantial evidence. Remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 27, 2018
Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge